# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DIANE PATCHEN,                          :
                                        :
                    Plaintiff,          :
                                        :          CIVIL ACTION
          v.                            :
                                        :          NO. 11-5388
TREVOR McGUIRE, *et al.*,               :
                                        :
                    Defendants.         :
                                        :

## MEMORANDUM

YOHN, J.                                                   September 27, 2012

Plaintiff, Diane Patchen, brings this action against defendants Trevor McGuire,

Eatsleepmusic Corp. ("ESM"), Shanda Lancaster Maddox, Laurence Dickerson, and Catherine

Loudon alleging civil conspiracy, intentional infliction of emotional distress ("IIED"),

defamation, and copyright infringement. Before me are defendants' individual motions to dismiss

the second amended complaint for failure to state a claim pursuant to Federal Rule of Civil

Procedure 12(b)(6) and for lack of personal jurisdiction pursuant to Federal Rule of Civil

Procedure 12(b)(2), as well as Patchen's motion for severance and transfer of the claims against

Maddox and Dickerson.

For the reasons set out below, I will dismiss Patchen's case in its entirety against ESM,

McGuire, Maddox, Dickerson, and Loudon for lack of personal jurisdiction. I will deny her

motion for severance and transfer against Maddox and Dickerson because severance and transfer

are not "in the interest of justice."[1] 28 U.S.C. § 1404(a).

---

[1] I do not reach the Rule 12(b)(6) questions because personal jurisdiction does not exist
with respect to any of the defendants.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Patchen's claims stem from her involvement, beginning in 2006, with an online karaoke website called "singsnap.com" ("Singsnap"). (2d Am. Compl. ¶ 11.) ESM owns and operates Singsnap and McGuire is the president and chief executive officer of Singsnap. (*Id.* ¶ 13.) ESM is a Canadian corporation with its principal place of business in Ontario, Canada. (*Id.* ¶ 5.) McGuire also resides in Ontario. (*Id.* ¶ 4.) Patchen alleges that McGuire informed her that, as of 2010, forty percent of Singsnap's approximately one million users were United States residents; Patchen also claims that she is aware of "numerous Singsnap site users" residing in Pennsylvania. (*Id.* ¶ 13.)

From 2006 to February 2010, Patchen performed various volunteer services for ESM from her home in Pennsylvania. (*Id.* ¶ 16.) She was compensated "in-kind," in that ESM provided her free services on Singsnap. (*Id.* ¶ 17.) While volunteering for ESM, Patchen became acquainted with McGuire; they engaged in extensive online correspondence from 2007 through February 2010. (*Id.* ¶ 19.)

In 2007, Patchen created a video using Singsnap; in the video, she performed a karaoke version of a song entitled "Sexy Back" while dancing. (*Id.* ¶ 22.) Patchen posted it on a publicly accessible portion of Singsnap. (Defs. McGuire and ESM's Mot. to Dismiss Pl.'s 2d Am. Compl. ("McGuire's Mot. to Dismiss") Ex. A.) Shortly thereafter, she moved the video to the private portion of her Singsnap account, and then deleted the video from her account altogether in early 2009. (2d Am. Compl. ¶¶ 23-24.)

In early 2010, McGuire barred Patchen from further use of the Singsnap site. (*Id.* ¶ 30.) Patchen then became involved with another website, which she refers to as the "Singsnap

2

Discussion Site."[2] (*Id.* ¶ 31.) This website was used by former users of Singsnap to discuss matters related to Singsnap; Patchen participated in these discussions. (*Id.*)

Patchen alleges McGuire entered into a conspiracy around this time for the purpose of harrassing, embarrassing and humiliating her, defaming her, violating her copyrights in the [v]ideo, and also inflicting severe emotional distress on her. (*Id.* ¶ 32.) Patchen names ESM, Maddox, Dickerson, and Loudon, as well as unknown persons, as McGuire's co-conspirators.[3] (*Id.* ¶ 32.) Specifically, Patchen asserts that McGuire and members of ESM's technical staff retrieved the video from Singsnap's servers and provided a copy to Maddox. (*Id.* ¶ 37.) Maddox allegedly posted the video, at McGuire's direction, on the public website "youtube.com" along with comments defaming Patchen; Maddox also allegedly distributed a copy to Dickerson. (*Id.* ¶¶ 37, 40, 42.) Patchen further claims that McGuire and ESM displayed the video on Singsnap in December 2011, in violation of her copyrights. (*Id.* ¶ 55.)

At the time of these events, Loudon was an employee of ESM. (*Id.* ¶ 33.) She currently resides in Lanarkshire, Scotland. (*Id.* ¶ 7.) Patchen states that, beginning in or about February 2010, Loudon began to post "harassing and defamatory" comments about her on various websites, including the Singsnap Discussion Site. (*Id.* ¶ 43.) Loudon did so under various aliases, so as to conceal her identity. (*Id.*) Patchen claims that Loudon acted at McGuire's direction. (*Id.*) As grounds for her belief, Patchen points to a series of e-mail exchanges between McGuire,

---

[2] It appears that the phrase "Singsnap Discussion Site" refers to one or all of a series of websites entitled "singsnapsucks.com," "singsnapsucks2.com," and "manthissitesucks.com." (McGuire's Mot. to Dismiss at 5.) Patchen never specifies which website she is referring to.

[3] Patchen also names "R. Loudon" as a co-conspirator. However, because he is not named in any of the counts, I will omit him from a recounting of the facts.

Loudon, and others. Patchen received these e-mails from Sally Matzke, another former user of Singsnap; Matzke received the e-mails from Loudon herself. (*Id.* ¶ 44; *id.* Ex. D.)

At the time in question, Dickerson was a former user of Singsnap and an acquaintance of Maddox. (*Id.* ¶ 33.) Dickerson currently resides in Bremerton, Washington. (*Id.* ¶ 7.) Patchen claims that, after receiving a copy of the video from Maddox, Dickerson threatened to post a copy on an "adult-oriented" website. (*Id.* ¶ 42.) She further claims that Dickerson, under numerous aliases, posted defamatory content on the Singsnap Discussion Site "and elsewhere." (*Id.* ¶ 43.) According to the complaint, these postings include accusations of "illegal activities" made in May 2011 on three consumer-reporting websites.[4] (*Id.* ¶ 54.) Patchen asserts that Maddox assisted Dickerson in making the May 2011 postings. (*Id.*)

Finally, Maddox was another volunteer working for ESM in connection with Singsnap at the time of the events. (*Id.* ¶ 33.) She currently resides in Dickson, Tennessee. (*Id.* ¶ 6.) Patchen claims that Maddox, aside from re-posting the video on youtube.com, also sent the youtube link of the video to another public website. (*Id.* ¶ 41.) Patchen claims that Maddox also anonymously posted defamatory comments on various websites, including the Singsnap Discussion Site. (*Id.* ¶ 43.) She asserts that Maddox persisted in this conduct from February 2010 through January and February, 2012. (*Id.* ¶¶ 43,56.)

In addition to the conduct described above, Patchen alleges that, beginning in February 2010, defendants Dickerson, Loudon, and Maddox "began directing numerous harassing and offensive e[-]mails directly to [her]." (*Id.* ¶ 49.)

---

[4] Patchen identifies the sites as "www.ripoffreport.com," "www.pissedoffconsumer.com," and "aboutus.org."

As a result of these alleged events, Patchen commenced the instant action in August 2011. She filed her second amended complaint on February 28, 2012. All defendants properly objected to the exercise of personal jurisdiction by way of their individual motions to dismiss Patchen's second amended complaint. These motions are largely duplicative, so I find it appropriate to address them collectively.

## II.    DISCUSSION

When a defendant challenges a court's exercise of personal jurisdiction over him or her, the plaintiff bears the burden of "prov[ing], by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). But where, as here, the court has not held an evidentiary hearing on the issue, to survive dismissal "the plaintiff need only establish a prima facie case of personal jurisdiction." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Under this standard, the court must accept the plaintiff's allegations as true and resolve any factual disputes in the plaintiff's favor. *See id.* But even under this standard, the plaintiff may not "rely on the bare pleadings alone in order to withstand [dismissal]"; the plaintiff must respond to the motion to dismiss with "actual proofs"—such as "sworn affidavits or other competent evidence"—not "mere allegations." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984).

### A.    Standards of Personal Jurisdiction

A district court may generally assert personal jurisdiction over a defendant to the extent permitted under the law of the state in which the court sits. *See* Fed. R. Civ. P. 4(k). Because this court sits in Pennsylvania, the scope of its personal jurisdiction over a nonresident defendant is defined by Pennsylvania's long-arm statute, which provides that a Pennsylvania

5

court may exercise jurisdiction over a person "to the fullest extent allowed under the Constitution of the United States."[5] 42 Pa. Cons. Stat. § 5322(b). Thus, a court may exercise personal jurisdiction over a defendant as long as it does not violate due process. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984).

Due process requires that a defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The Supreme Court has explained that these "minimum contacts must have a basis in some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 109 (1987) (internal quotation marks omitted). And "[t]he nature of these contacts must be such that the defendant should be reasonably able to anticipate being haled into court in the forum state." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987).

A court's exercise of personal jurisdiction over a nonresident defendant may be based on one of two theories. If the cause of action arises from or is related to the defendant's contacts with the forum state, a court may have specific jurisdiction over the defendant. *See Helicopteros*, 466 U.S. at 414 n.8. Alternatively, if the defendant maintains "continuous and

---

[5] This language applies to a court's exercise of specific jurisdiction. *See* 42 Pa. Cons. Stat. § 5322(b), (c). A separate provision governs the exercise of general jurisdiction. *See id.* § 5301. Section 5301 provides for general jurisdiction over individuals where an individual consents, is domiciled, or receives service in Pennsylvania. *Id.* § 5301(a)(1). It provides for general jurisdiction over nonresident corporations where the corporation is incorporated under Pennsylvania law, the corporation consents, or the corporation carries on "a continuous and systematic part of its general business" within Pennsylvania. *Id.* § 5301(2)(iii).

systematic" contacts with the forum state, a court may have general jurisdiction over the defendant and may entertain suits against the defendant on any claim, including those that do not arise from defendant's contacts with the forum. *See id.* at 414-16 & n.9.

The Third Circuit has framed the specific-personal-jurisdiction inquiry in two slightly different ways. *See Marten v. Godwin,* 499 F.3d 290, 297 (3d Cir. 2007); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 n.6 (3d Cir. 2003). Under the standard minimum-contacts analysis, "[s]pecific jurisdiction exists if the defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Even where these two requirements have been met and the defendant is said to have "the requisite minimum contacts with the forum," *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009), "a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *Id.* (quoting *Burger King*, 471 U.S. at 476).

The second variant of the specific personal jurisdiction inquiry is the "effects" test. This test requires that "(1) [t]he defendant committed an intentional tort; (2) [t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) [t]he defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001) (emphasis omitted); *see also Calder v. Jones*, 465 U.S. 783 (1984). "Only if the 'expressly aimed' element of the effects test is met need [a court] consider the other two elements." *Marten*, 499 F.3d at 297. Under either

7

test, when dealing with Internet communications or transactions, a central factor is the defendant's "intentionality."[6] *Toys "R" Us*, 318 F.3d at 455 n.6.

## B.    Application

Plaintiff asserts that the court has jurisdiction over defendants because "defendants directed their conduct toward plaintiff[], who reside[s] in this district, because ESM does business in this District, and because a substantial part of the acts and omissions giving rise to the claims in this action occurred in this District."[7] (2d Am. Compl. ¶ 10.) Patchen can only plausibly claim specific personal jurisdiction. The specific-jurisdiction inquiry is specific to each claim. *Remick*, 238 F.3d at 255. "[A] conclusion that the District Court has personal

---

[6] The Third Circuit has described the relationship between the two variants: "[g]enerally speaking, under *Calder* an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *Imo Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 260 (3d Cir. 1998).

[7] It is unclear whether this is an invocation of both general and specific jurisdiction, but Patchen cannot viably claim general jurisdiction over any of the nonresident individuals. Patchen does not allege that McGuire, Maddox, Dickerson, or Loudon have ever been present or domiciled in Pennsylvania. Thus, they do not fall into any of the categories of section 5301(a)(1).

While Patchen alleges that ESM "does business" in Pennsylvania, the contacts between ESM and this forum are not sufficient to establish general personal jurisdiction. To establish general jurisdiction, plaintiff must demonstrate that defendants' contacts with the forum state are "continuous and substantial." *Provident Nat'l Bank*, 819 F.2d at 437. This test is rigorous and is "not an easy one to meet," *Surgical Laser Techs., Inc. v. C.R. Bard, Inc.*, 921 F. Supp. 281, 284 (E.D. Pa. 1996).

Patchen states that she "is aware that numerous Singsnap site users resided and continue to reside within Pennsylvania." (2d Am. Compl. ¶ 13.) Patchen herself performed volunteer services for ESM that were compensated in-kind. (*Id.* ¶¶ 16-17). There is no indication in the record that ESM has any offices, is registered to do business, or pays taxes in Pennsylvania. Other cases have indicated that general jurisdiction is improper even on much stronger facts. *See, e.g.*, *Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539 (3d Cir.1985). Because ESM's contacts with the forum state are not "continuous and substantial," ESM is not subject to general personal jurisdiction in this court.

jurisdiction over one of the defendants as to a particular claim . . . does not necessarily mean that it has personal jurisdiction over that same defendant as to [plaintiff's] other claims." *Id*. Thus, I evaluate separately each of Patchen's claims against each defendant. Because disposition of the civil-conspiracy claim is contingent upon the disposition of the underlying causes of action, I address it last.

### 1.   Maddox

Patchen claims that Maddox (of Dickson, Tennessee) conspired with McGuire to defame her, infringe her copyright, and inflict emotional distress upon her. (*Id.* ¶ 32.) Patchen specifies that Maddox received Patchen's video from McGuire and re-posted that video on youtube.com with defamatory comments. (*Id.* ¶ 37.) Patchen also asserts that Maddox sent numerous "harassing and offensive e[-]mails" directly to her and that Maddox posted defamatory comments about her on the Singsnap Discussion Site and other websites. (*Id.* ¶¶ 43,49.)

However, *Time Share* makes clear that a plaintiff must answer a motion to dismiss for lack of personal jurisdiction with more than reliance on bare pleadings. 735 F.2d at 66 n.9. Patchen has provided declarations (taken from herself and others) in response to the dismissal motions, yet none of the declarations or other exhibits supports the allegation that Maddox sent Patchen offensive e-mails. Outside of the pleadings, Patchen provides printed Internet pages showing that Maddox posted harassing comments on what appears to be the Singsnap Discussion Site and on youtube.com. (2d Am. Compl. Exs. B, F, G.)[8] Furthermore, she provides

---

[8] While Patchen avers that Maddox assisted Dickerson in making defamatory comments on certain consumer-review websites (2d Am. Compl. ¶ 54), the attached exhibit does not support this claim. (*See id.* Ex. H.) Nor do any of the declarations. Without adequate support in the record, I am constrained to disregard the bare allegation that Maddox and Dickerson were jointly responsible for these particular posts.

a declaration from an administrator of the Singsnap Discussion Site stating that Maddox used various Internet pseudonyms to post what plaintiff alleges are "harassing and abusive statements" on that website. (Pl.'s Mem. of Law in Opp'n to Maddox's Mot. to Dismiss ("Pl.'s Opp'n to Maddox") Ex. A.) Patchen also provides her own declaration and certain exhibits indicating that Maddox re-posted the video on youtube.com along with insulting comments. (Pl.'s Mem. of Law in Opp'n to McGuire and ESM's Mot. to Dismiss ("Pl.'s Opp'n to McGuire") Exs. 1-4.) In evaluating whether Maddox has sufficient contacts with this forum, I thus rely on her conduct in (1) posting allegedly defamatory content, and (2) posting the allegedly copyright-protected video.[9]

Where a nonresident defendant has allegedly posted defamatory content on a website, the court must assess "whether the Internet activity in question was expressly aimed at the forum state by examining both the features of the web site and how the defendants used those features." *Gorman v. Jacobs*, 597 F. Supp. 2d 541, 547 (E.D. Pa. 2009) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)). *See generally Remick*, 238 F.3d at 258-59 (citing *Calder*, 465 U.S. at 789; *Imo*, 155 F.3d at 265-66). The crucial factor is whether a defendant intentionally targeted or interacted with the forum state through his use of the website. *See Toys "R" Us*, 318 F.3d at 452. This requirement can be satisfied if some aspect of the website "suggest[s] to the user that residents of the forum state are the target audience." *Gorman*, 597 F. Supp. 2d at 548 (emphasis omitted). However, "mere posting of information or

---

[9] The comments posted by Maddox, Dickerson, and Loudon are too numerous to be fully reproduced here. The posts consisted almost entirely of juvenile vitriol, vulgar words, and insults about Patchen's character and appearance. (*See* 2d Am. Compl. Ex. G.) One of the defendants characterizes the entire dispute (with some justification) as a "school-yard spat." (McGuire's Mot. to Dismiss at 1.)

advertisements on an Internet web site does not confer nationwide personal jurisdiction." *Remick*, 238 F.3d at 259 n.3. Moreover, personal jurisdiction is not established merely because the defendant harms the plaintiff while she happens to reside in the forum state. *Marten v. Godwin*, 499 F.3d 290, 299 (3d Cir. 2007); *Imo,* 155 F.3d at 263 ("[T]he mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy *Calder*."). Nor is defendant's knowledge that the plaintiff resides in the forum sufficient. *Gorman*, 597 F. Supp. 2d at 548 ("Simply (a) knowing that the plaintiff is in the forum state, (b) posting negative statements about the plaintiff's forum-related activities, and (c) referring to the forum in one's writing will not suffice to satisfy the *Calder* effects test.").

These cases establish that Maddox's conduct with respect to the postings was not sufficient to create personal jurisdiction. Maddox is a Tennessee resident with no relationship with Pennsylvania and none of the conduct at issue occurred in or was deliberately directed at Pennsylvania. While Patchen's residence is in Pennsylvania, nothing in Maddox's conduct or statements indicates a purpose to target Pennsylvania. *See Remick*, 238 F.3d at 259. Patchen does not argue that Maddox directed defamatory statements at any other residents of Pennsylvania or that Maddox ever mentioned Pennsylvania in her statements. *Id.* (distinguishing *Calder* on the grounds that the defendant periodical in *Calder* had a circulation of 600,000 in the forum state). Nor does Patchen claim that Maddox was physically present in Pennsylvania when undertaking these acts on the Internet. Thus, the allegedly defamatory postings cannot

11

support specific personal jurisdiction over Maddox for defamation.[10]

On her copyright infringement claims, Patchen must still satisfy the requirement that Maddox "purposefully directed" or "expressly aimed" her activities toward the forum state. *See Toys "R" Us*, 318 F.3d at 454 (discussing, in a trademark infringement action, whether "defendant purposefully availed itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts" (internal quotations omitted)). Thus, the actions that allegedly violate Patchen's rights in the video—such as unauthorized reproduction or distribution of the copyrighted material—must have some connection to the forum state.

Patchen, the creator of the video, is a resident of Pennsylvania; however, it is not clear from the complaint that the video was created and/or uploaded to Singsnap while she was in Pennsylvania. But even if one assumes that the video itself originated in Pennsylvania, the allegations do not establish that Maddox "purposefully directed" her conduct at the forum state and nothing suggests that residents of Pennsylvania were the target audience. In *Am. Bd. of Internal Medicine v. Mukherjee*, No. 10-2676, 2011 WL 294029 (E.D. Pa. Jan. 31, 2011), an organization headquartered in Pennsylvania accused defendants of illicitly transmitting its copyrighted test questions. The test questions were electronically stored in an "item bank," also located in Pennsylvania. *Id.* at *4-5. Yet, because all of the alleged acts of infringement—including the sending of e-mails containing test questions—occurred outside of

---

[10] I forego the standard minimum-contacts analysis because generally a plaintiff who cannot establish sufficient contacts under the effects test will also fail under the standard test. *See supra* note 6. Furthermore, under the facts alleged in this case, the purposeful-availment requirement and the express-aiming requirement effectively entail the same analysis.

Pennsylvania, the court found that the effects test was not met. *Id.* at *6; *see also Am. Bd. of Internal Medicine v. Oni*, No. 10-2679, 2010 WL 3860444 (E.D. Pa. Sept. 30, 2010) (same). *Mukherjee* and *Oni* demonstrate that it is not sufficient that the infringed content (in this case, the video) has some link to this forum. Patchen does not assert Pennsylvania-based conduct by Maddox—such as if, for example, she planned to sell the video in Pennsylvania or distribute it through facilities located in Pennsylvania. *Cf. CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264-65 (6th Cir. 1996) (personal jurisdiction based, in part, on defendant's transfer of electronic files to plaintiff's in-state computer system). The alleged acts of infringement do not support personal jurisdiction over Maddox on the copyright claim.

Each of these contacts is too insubstantial to sustain specific personal jurisdiction. Even in the aggregate, I do not believe Maddox's actions rise to the level of being "expressly aimed" at this forum. Patchen has not established specific personal jurisdiction over Maddox with respect to her IIED, defamation, and copyright-infringement claims.[11]

### 2.     Dickerson

With respect to Dickerson, the complaint alleges the following: Dickerson conspired with McGuire to defame and harass Patchen by posting abusive commentary on various websites (2d Am. Compl. ¶ 32); Dickerson acted in concert with ESM and Maddox in the

---

[11] This statement applies to Patchen's attempt to establish jurisdiction based on Maddox's *own* contacts. The possibility for co-conspirator jurisdiction still remains, since Patchen alleges a civil conspiracy. *See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 846 F. Supp. 374, 379 (E.D. Pa. 1994) ("[A] court imputes the contacts of the 'resident' co-conspirator over whom it has jurisdiction to the 'foreign' co-conspirator to see if there are sufficient contacts to exercise jurisdiction over the latter."). But as is explained below, none of the defendants is subject to co-conspirator jurisdiction in this forum. *See infra* note 23.

distribution/threatened distribution of the video (*Id.* ¶ 33); Dickerson possesses and stated he intended to re-post the video on an "adult-oriented" website (*Id.* ¶ 42); Dickerson accused Patchen of fraudulent activities on consumer-review websites (*Id.* ¶ 54); and Dickerson sent numerous "harassing and offensive e[-]mails" directly to her (*Id.* ¶ 49).

As I did with Maddox, I look to the record to find what allegations Patchen has supported with evidence outside the pleadings. Patchen has provided printouts of the posts that Dickerson authored on consumer-review websites. (*Id.* Ex. H.) Patchen has also provided a printout of Dickerson's threat to post the video on an adult-oriented website, along with some insulting commentary. (*Id.* Ex. C.)[12] There is no evidence given in support of Patchen's allegation that Dickerson sent her abusive e-mails. Therefore, personal jurisdiction must derive from Dickerson's various derogatory posts or his online threats of copyright infringement.

As was the case with Maddox, Dickerson's communications on nationally accessible websites is insufficient to show the purposeful targeting of this forum that is required to sustain personal jurisdiction. *See Marten*, 499 F.3d at 299; *Toys "R" Us*, 318 F.3d at 452; *Remick,* 238 F.3d at 259 n.3; *Gorman*, 597 F. Supp. 2d at 548. Nor are the alleged acts of copyright infringement sufficiently connected to this forum. *Toys "R" Us*, 318 F.3d at 454; *Oni*, 2010 WL 3860444, at *6. Patchen has not shown that Dickerson "expressly aimed" his conduct at Pennsylvania, even when all his alleged contacts are aggregated. Dickerson is and has been a

---

[12] It is unclear what website the printouts are from, and the author is only identified by his location, "Bremerton, USA." However, Dickerson does not specifically challenge Patchen's assertions regarding this issue. I conclude that the printout is sufficient evidence to consider this contact in the jurisdictional inquiry. *Cf. Ciolli v. Iravani*, 651 F. Supp. 2d 356, 366 n.2 (E.D. Pa. 2009).

resident of Bremerton, Washington, has no relationship with Pennsylvania, and was not involved in any conduct at issue that occurred in Pennsylvania. For these reasons, I conclude that Patchen has failed to establish specific personal jurisdiction over Dickerson with respect to her IIED, defamation, and copyright-infringement claims based on these contacts.

### 3. Loudon

Patchen names Loudon in the civil conspiracy, defamation, and IIED claims, but does not name her in the copyright-infringement claim. Specifically, Patchen alleges that Loudon conspired with others for the purpose of harassing her (2d Am. Compl. ¶ 32) and that Loudon, acting at the direction of McGuire, posted numerous anonymous defamatory comments on the Singsnap Discussion Site and other websites. (*Id.* ¶ 43.) Patchen asserts that Loudon sent numerous "harassing and offensive e[-]mails" directly to her. (*Id.* ¶ 49.)

In support of these allegations, Patchen provides the following: copies of e-mails and other Internet communications that contain information demonstrating that Loudon posted derogatory comments targeting Patchen on the Singsnap Discussion Site (*Id.* Exs. D, E); her own declaration that Loudon "directed hundreds of abusive and harassing electronic mail, text[,] and private messages to me in Pennsylvania" along with copies of some of the e-mails (Pl.'s Mem. of Law in Opp'n to Loudon's Mot. to Dismiss ("Pl.'s Opp'n to Loudon") Ex. A);[13] and a declaration from an administrator of the Singsnap Discussion Site that some of the allegedly defamatory comments about Patchen were posted by Loudon. (*Id.* Ex. B.)

---

[13] The e-mails are too numerous to reproduce here. Like the allegedly defamatory posts, the e-mails are filled with vulgarity and puerile attacks regarding Patchen's appearance and impugning her sanity.

As explained above, Loudon's posts on a nationally accessible website are not sufficient to create specific personal jurisdiction in this forum for the defamation claim. *See, e.g.*, *Gorman*, 597 F. Supp. 2d at 548. However, Patchen has provided sufficient evidence for me to consider Loudon's direct messages to Patchen as part of the personal-jurisdiction inquiry. Courts in this circuit have found that "minimal correspondence alone will not satisfy minimum contacts." *Barrett v. Catacombs Press*, 44 F. Supp. 2d 717, 729 (E.D. Pa. 1999). But the question still remains whether "hundreds" of Internet messages sent to a Pennsylvania resident by a resident of Scotland can establish personal jurisdiction. Moreover, courts have differed in their jurisdictional analysis for cases involving a smaller volume of correspondence. *Compare Barrett*, 44 F. Supp. 2d at 729 (two e-mails sent by defendant to plaintiff not sufficient for purposeful availment); *Remick*, 238 F.3d at 259 (supposedly defamatory letter faxed directly to plaintiff not sufficient for express aiming); *with A & F Corp. v. Bown*, No. 94-4709, 1995 WL 479411, at *3 (E.D. Pa. Aug. 11, 1995) (two letters sent to forum that formed basis of negligent misrepresentation claim were enough that "[defendant] should reasonably expect to be haled into this forum to account for his actions"); *Waimberg v. Med. Transp. of Am., Inc.,* 52 F. Supp. 2d 511, 515-17 (E.D. Pa. 1999) (phone calls and letters sent to Pennsylvania resident enough to establish personal jurisdiction where out-of-state corporation tortiously interfered with plaintiff's contract with a corporation in a third state).

I note that Patchen nowhere alleges that Loudon necessarily knew Patchen resided in Pennsylvania or that Patchen was accessing the e-mails in Pennsylvania. *See Watiti v. Walden Univ.*, No. 07-4782, 2008 WL 2280932, at *10 (D.N.J. May 30, 2008) ("[T]here is usually nothing about an e[-]mail address that would indicate to the sender the location of the recipient .

16

. . [and] an e[-]mail recipient can typically access his or her e[-]mail messages from anywhere in the world."). Loudon's knowledge would certainly bear on the question of whether she purposely directed her conduct at Pennsylvania. The *Watiti* court opined that "where an asserted basis for personal jurisdiction is e[-]mail communications, a threshold question that should be asked with respect to the issue of 'purposeful availment' is whether there is any indication in the substance of the e[-]mails, the e[-]mail address itself, or other facts incident to the communications that the sender of the e[-]mails was aware that the recipient was located in or would be accessing the e[-]mails from the forum state." *Id.* at *11.

In the end, the touchstone remains whether the communications demonstrate purposeful availment or express targeting of the forum state by Loudon such that she could reasonably anticipate being haled into court here. *See Barrett*, 44 F. Supp. 2d at 729; *Machulsky v. Hall*, 210 F. Supp. 2d 531, 539-540 (D.N.J. 2002). After all, "[t]he Third Circuit has held that telephone communications or mail sent by a defendant does not trigger personal jurisdiction if they 'do not show purposeful availment.'" *Barrett*, 44 F. Supp. 2d at 729 (quoting *Mellon Bank (East) PFSF, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 556 (3d. Cir. 1993)). And in the context of intentional torts, the Third Circuit requires that defendants "expressly aimed their tortious conduct at Pennsylvania so that Pennsylvania was the focal point of the tortious activity." *Remick*, 238 F.3d at 260.

I conclude that, while the correspondence here is voluminous, it cannot be said that Loudon "expressly aimed" her conduct at Pennsylvania, or that it was "the focal point of the

tortious activity."[14] Simply put, "there is a difference between tortious conduct targeted at a forum resident and tortious conduct expressly aimed at the forum." *English Sports Betting, Inc. v. Tostigan*, No. 01-2202, 2002 WL 461592, at *3 (E.D. Pa. Mar. 15, 2002). Nothing in the e-mails provided by Patchen discloses that Loudon intended to target Pennsylvania or was aware Patchen would access the e-mails in Pennsylvania. Therefore, it cannot be said that Loudon "should reasonably anticipate being haled into court [here]." *Machulsky*, 210 F. Supp. 2d at 538 (internal quotations omitted). For these reasons, I conclude that Patchen has failed to make a prima facie case that this court can exercise specific personal jurisdiction over Loudon based on these contacts with respect to the IIED or defamation claims.

### 4.    McGuire

Patchen names McGuire in her defamation, civil conspiracy, IIED, and copyright-infringement claims. She alleges that McGuire conspired with the other defendants for the purpose of harassing her, violating her copyrights in the video, and inflicting severe emotional distress upon her. (2d Am. Compl. ¶ 33.) She states that McGuire committed "overt, unlawful acts in furtherance of the conspiracy."[15] (*Id.* ¶ 34.) She further alleges that McGuire retrieved a copy of the video from Singsnap's servers and provided a copy to Maddox, which was an infringement of her copyright. (*Id.* ¶¶ 37, 39.) She finally claims that McGuire "caused the Video to be displayed publicly" on Singsnap, also in violation of her copyright. (*Id.* ¶ 55.)

---

[14] The outcome remains the same even when the e-mail correspondence is combined with the contact stemming from the defamatory posts. The latter contact only minimally enhances Loudon's connection to Pennsylvania.

[15] Patchen does not allege that McGuire himself ever posted defamatory comments or sent her abusive messages. Rather, he allegedly directed the other defendants to do so and allegedly authored content for some of their posts. (2d Am. Compl. ¶¶ 43-45.)

Patchen asserts personal jurisdiction is proper because McGuire "directed hundreds of e-mails and electronic 'private messages' to [her] in Pennsylvania, and also participated in a 'Skype' or 'voice over IP' conference call with [her] while [she] was in Pennsylvania."[16] (*Id.* ¶ 19.)

Patchen submits a declaration by Sally Matzke that Loudon said "[Loudon] and Trevor McGuire . . . were involved in making" abusive posts on sites related to Singsnap, that "Mr. McGuire would tell [Loudon] what he wanted her to say," and that Loudon would "cut and paste his words for the posts." (Pl.'s Opp'n to McGuire Ex. B.) Patchen has also provided exhibits including e[-]mails and other communications supporting her claim that McGuire instigated Loudon to post the abrasive commentary. (2d Am. Compl. Exs. D, E.) This is the only evidence that Patchen has provided beyond the bare pleadings, as required by *Time Share*. However, McGuire does not directly challenge Patchen's allegations that he exchanged e-mails with her from 2007 to February 2010, so I will also consider these communications.

As explained above, when a defendant posts on a website that is accessible globally (and that has no special connection to Pennsylvania), this contact alone is insufficient to sustain specific personal jurisdiction. *See, e.g.*, *Gorman*, 597 F. Supp. 2d at 548. Even if McGuire knew that Patchen resides in Pennsylvania, this by itself is insufficient to change the outcome. *See id.* Thus, McGuire's directing *others* to make posts is too attenuated a contact to support a finding of jurisdiction. Similarly, copying and distributing material on the Internet is not by itself sufficient to subject McGuire, a resident of Ontario, Canada, to personal jurisdiction in this court for the copyright-infringement claim. *See Oni*, 2010 WL 3860444, at *6. Nor do these acts

---

[16] McGuire's contacts with Pennsylvania must be assessed independently from those of ESM. *See Nicholas v. Saul Stone & Co. LLC*, 224 F.3d 179, 184 (3d Cir. 2000) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984)).

combined provide the requisite connection to Pennsylvania, because they still do not demonstrate "express[] aim[ing]."

The personal, multi-year e-mail exchange between Patchen and McGuire is a more substantial connection, given that Patchen was a Pennsylvania resident at the time. I proceed under the standard personal-jurisdiction inquiry because Patchen has not claimed that *this particular* communication between 2007 and 2010 was itself tortious. *See Ciolli v. Iravani*, 651 F. Supp. 2d 356, 372 (E.D. Pa. 2009) ("[Defendant's] attendance at the meeting was not tortious and thus cannot establish specific jurisdiction under the effects test."). That is, when McGuire and Patchen communicated from 2007 to 2010, McGuire was not sending her harassing or abusive e[-]mails.  Patchen states only that the exchange covered multiple topics, including "McGuire's commentary on the users of the Singsnap site, disciplinary actions McGuire was contemplating with respect to Singsnap site users, Ms. Patchen's work on ESM's behalf, and compliments by McGuire on Ms. Patchen's appearance." (2d Am. Compl. ¶ 20.)  Therefore, Patchen must initially show that McGuire "purposefully directed [his] activities at the forum . . . [and] the litigation must arise out of or relate to at least one of those activities." *D'Jamoos*, 566 F.3d at 102 (internal quotation marks omitted).

Patchen claims the following relation between the instant litigation and her 2007-2010 communication with McGuire. First, Patchen asserts that she provided personal information in the e-mails, which McGuire in turn provided to the other defendants, who used it in their harassment campaign. (Pl.'s Opp'n to McGuire at 11.) Second, she asserts that the creation of the video "resulted directly from McGuire's correspondence and relationship with [her]." (*Id.* at 12.)

20

I conclude that Patchen has not adequately demonstrated that these communications are related to any of her claims. She baldly asserts that the video resulted from McGuire's correspondence with her. (*Id.*) This claim is conclusory, unsupported by affidavit or other competent evidence, and vague. Even if it is true, it is unclear whether causing creation of the video would be sufficiently related to the claims of copyright *infringement*, which arise from the subsequent copying and reproduction of the video. And while Patchen has adduced some competent evidence that McGuire may have directed or assisted the co-defendants in harassing or defaming her, she has not provided any exhibits or declarations to substantiate her claim that McGuire transmitted personal information from their e-mail exchange. Any links between the statements of the co-defendants and the communications with McGuire are provided only in the bare allegations of the complaint. (*See* 2d Am. Compl. ¶¶ 38, 48.) McGuire challenges the assertion that he passed on personal information from their exchange. (Reply in Supp. of Defs. McGuire and ESM's Mot. to Dismiss ("McGuire's Reply") at 8.) Thus, in light of the requirements of *Time Share*, Patchen has not adequately shown that the counts for IIED or defamation are related to the earlier correspondence between McGuire and her.

The e-mail exchange between McGuire and Patchen *alone* cannot serve as a contact sufficient to support personal jurisdiction for Patchen's remaining claims. Conceivably, the *sum* of claim-related contacts (directing the defamatory posts and copying the video) and non-claim-related contacts (the 2007-2010 correspondence) could support specific personal jurisdiction over McGuire. Thus, I consider whether I should aggregate *all* of McGuire's contacts with Patchen and this forum.

Prior Third Circuit decisions militate against such aggregation. In *Vetrotex Certainseed*

*Corp. v. Consol. Fiber Glass Prods., Co.*, the Third Circuit faced the question of relatedness in a breach of contract suit where the parties had engaged in multi-year negotiations—some negotiations were related to the disputed contract, others were not. 75 F.3d 147 (3d Cir. 1996). The court stated that "the negotiations that occurred between [defendant] and [plaintiff] in the 1980s are unrelated to the 1992 Supply Contract and are [therefore] not relevant to specific jurisdiction." *Id.* at 153. *See also Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97-98 (3d Cir. 2004) (relying on a factually tighter connection to justify counting defendant's contacts in the jurisdictional inquiry); *id.* at 107 (Scirica, C.J., concurring in part, dissenting in part) ("We cannot simply aggregate all of a defendant's contacts with a state—no matter how dissimilar in terms of geography, time, or substance—as evidence of the constitutionally required minimum contacts." (quoting *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997))). In light of these cases, I conclude that Patchen's bald assertions of a vague connection between the non-tortious correspondence and her later-developing claims to be insufficient to warrant any consideration of McGuire's 2007-2010 contacts in the specific-jurisdiction inquiry.[17]

Therefore, I conclude that Patchen has failed to establish specific personal jurisdiction over McGuire based on McGuire's own contacts for her claims of IIED, copyright infringement, and defamation.

### 5.    ESM

----

[17] *Miller Yacht* states that different considerations may govern the specific-jurisdiction inquiry in contract versus tort cases. *See* 384 F.3d at 99. However, *Miller Yacht* also emphasizes the flexibility of the jurisdictional inquiry: "[w]e have not laid down a specific rule because we have approached each case individually and taken a realistic approach to analyzing a defendant's contacts with a forum." *Id.* at 100 (internal quotation marks omitted). In this case, I find *Vetrotex*'s facts to be analogous and its reasoning persuasive; I see no reason to discount the case based solely on the contract/tort distinction.

Patchen names ESM in the civil-conspiracy claim, the IIED claim, and the copyright-infringement claim.[18] She alleges that the other defendants, in committing overt acts in furtherance of the conspiracy, acted "with the assistance of ESM, which acted by and through ESM's agents and employees." (2d Am. Compl. ¶ 34.) She more specifically claims that in May 2011, "one or more members of ESM's technical staff" helped McGuire retrieve a copy of the video, which McGuire then provided to Maddox. (*Id.* ¶ 37.) She finally alleges that "McGuire and ESM caused the [v]ideo to be displayed publicly on the singsnap site, in willful violation of [her] copyrights" sometime in December 2011. (*Id.* ¶ 55.)

However, Patchen provides no "actual proofs" to support her allegations of ESM's direct involvement in the supposedly illicit reproduction of her video. Specific jurisdiction over ESM, therefore, can derive only from its ownership and operation of the Singsnap website, where Patchen created the video and where it was re-posted in December 2011.[19] Operation of the website is not itself a tortious activity, so I follow the traditional jurisdictional analysis and look to whether ESM, a Canadian corporation with its principal office in Ontario, Canada, has purposely availed itself of conducting business in Pennsylvania. *Cf. Zippo Mfg. Co.,* 952 F. Supp. 1119 (applying traditional purposeful-availment test where plaintiff brought trademark-infringement suit against defendant company based on defendant's operation of a website).

Purposeful availment can be shown by a defendant's "knowingly interacting with

----

[18] Plaintiff does not argue that there is specific jurisdiction over ESM, but I will address it for the purpose of completeness.

[19] Patchen nowhere alleges that abusive or defamatory content was ever posted on Singsnap itself. Thus, ESM is only implicated in the conduct leading to copyright infringement and—through that—IIED, and civil conspiracy.

residents of the forum state via its web site." *Toys "R" Us*, 318 F.3d at 454. Patchen avers in her second amended complaint that "numerous Singsnap site users resided and continue to reside within Pennsylvania." (*Id.* ¶ 13.) Patchen has submitted an unsigned declaration that users of Singsnap must provide physical addresses to ESM as part of the membership process. (Pl.'s Opp'n to McGuire Ex. A.)[20]

As the record stands, Patchen has failed to demonstrate purposeful availment. Patchen does not claim that Singsnap is somehow targeted at Pennsylvania. *Toys "R" Us*, 318 F.3d at 454.  It is unclear how many users of Singsnap are Pennsylvania residents or whether ESM "contemplate[d] that sales would occur with [Pennsylvania] purchasers." *Id.* at 454 n.5. Patchen's assertion that "numerous" Pennsylvania residents are Singsnap users is unsupported and vague; this is insufficient to show that ESM's contacts rise above the level of  "fortuitous, random, and attenuated." *Id.* at 455. Patchen has produced inadequate evidence to meet her burden of establishing at least a prima facie case that personal jurisdiction exists over ESM.

### 6.      Jurisdictional Discovery

---

[20] The evidentiary value of this declaration is drastically reduced because it is unsigned. *See Bastista v. U.S. Dept. of Justice*, 129 F. App'x 724, 725 (3d Cir. 2005) ("We will not consider the unsigned declaration that the Government submitted to show that [defendant] failed to exhaust his administrative remedies"); *Lappin v. Am. Towing & Transp. Co.*, No. 86-5330, 1987 WL 18045, at *2 (E.D. Pa. Oct. 6, 1987) (finding that personal jurisdiction did not exist because plaintiff's unsigned affidavit was countered by two signed affidavits); *see also* 28 U.S.C. § 1746 (requiring that unsworn declaration have signature in order to be effective). Moreover, McGuire and ESM directly and vigorously contest the substance of Patchen's assertion in a properly executed declaration: "[u]nder no circumstances does a Singsnap membership require a member to disclose physical address information to Singsnap." (McGuire's Reply Ex. 6.) *Time Share* requires that a court rely on "competent evidence" that goes beyond "bare pleadings"; however, Patchen's unsigned declaration does not have any more evidentiary weight than the factual recitations in a pleading. But regardless of whether I credit Patchen's claim, I conclude that she has failed to establish personal jurisdiction over ESM.

Patchen has requested that, in the event that I conclude that specific personal jurisdiction does not exist, she be permitted to take jurisdictional discovery with respect to each defendant. "[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous." *Toys "R" Us*, 318 F.3d at 456 (internal quotation marks omitted). "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state, . . . the plaintiff's right to conduct jurisdictional discovery should be sustained."[21] *Id.* (internal quotation marks omitted). Courts are more deferential when a plaintiff seeks discovery in order to establish jurisdiction against a corporation. *See Metcalfe*, 566 F.3d at 336.  But "[w]here the defendant is an individual, the presumption in favor of discovery is reduced." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997).

Thus, Patchen's strongest case for jurisdictional discovery lies against ESM. Yet Third Circuit case law demonstrates that "a mere unsupported allegation that the defendant transacts business in an area is clearly frivolous." *Id.* (internal quotation marks omitted). I find Patchen's vague allegation that "numerous Singsnap site users resided and continue to reside within Pennsylvania" to be tantamount to a claim that ESM "transacts business" in Pennsylvania. *See Parker v. Learn the Skills Corp.*, No.05-2752, 2006 WL 759693, at *4 (E.D. Pa. 2006) (denying discovery where "plaintiff alleg[ed] generalized conduct that was 'expressly targeted at

---

[21] It is unclear whether *Time Share*'s requirement for "sworn affidavits or other competent evidence" applies to a request for jurisdictional discovery (as opposed to a determination of the jurisdictional question itself). Out of an abundance of caution, I will accept Patchen's factual allegations as true in deciding whether to grant her request for discovery. *Cf. Toys "R" Us*, 318 F.3d at 457 (effectively accepting plaintiff's allegations as true when considering jurisdictional discovery request).

Pennsylvania residents' or revenue that was earned from 'internet users all over the world, including' Pennsylvania"). Patchen is not entitled to jurisdiction discovery against ESM.[22]

Similarly, none of Patchen's allegations with regard to the nonresident individuals entitles her to jurisdictional discovery. With respect to Loudon, Maddox, and Dickerson, Patchen has not alleged contacts beyond the defamatory postings, harassing e-mails, or acts of copyright infringement discussed above. None of these contacts was sufficient to subject Loudon, Maddox, or Dickerson to specific personal jurisdiction, and Patchen has not stated with "reasonable

---

[22] The instant case is distinguishable from *Toys "R" Us*, where the Third Circuit held that a district court abused its discretion by denying plaintiff jurisdictional discovery. 318 F.3d at 455-56. In *Toys "R" Us*, the Third Circuit was concerned that the district court had focused *exclusively* on the defendant's operation of a website in conducting the jurisdictional analysis. *Id.* at 456. The district court ignored allegations and evidence about other contacts that may have gone toward demonstrating defendant's purposeful availment of the forum. *Id.* ("The court's unwavering focus on the web site precluded consideration of other Internet and non-Internet contacts—indicated in various parts of the record—which, if explored, might provide the 'something more' needed to bring [defendant] within our jurisdiction.").

Here, Patchen has provided only the non-specific allegation that Singsnap has "numerous users" in this forum; the unsupported claim (properly disputed by ESM) that Singsnap collects its members' address information; and an assertion that she provided volunteer services for Singsnap from 2006 to February 2010. (2d Am. Compl. ¶¶ 16-17.)

As already discussed, even when accepted as true, the first two claims amount to a generalized assertion that ESM transacts business in this forum. Nor does the last claim make Patchen's jurisdictional claim non-frivolous. It is true that the video was created in 2007—during the period of Patchen's service. But according to Patchen's allegations, ESM's active involvement in the action dates to May 2011, while Patchen's volunteer work ceased over a year earlier. (*Id.* ¶¶ 16, 37.) This raises questions as to whether there is a sufficient relation between the volunteer work and the instant litigation to even consider it in the specific jurisdiction inquiry. *Cf. World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 268, 297 (1980) ("[A] corporation . . . can act to alleviate the risk of burdensome litigation by . . . severing its connection with the State."). Moreover, I find that Patchen's volunteer services—all apparently performed online, without traveling from her home in Pennsylvania, and compensated "in-kind" through free access to Singsnap—barely distinguish her from a regular member of the site. This contact is qualitatively different from the contacts alleged in *Toys "R" Us* and relied upon to sustain the request for jurisdictional discovery. *See* 318 F.3d at 457 (pointing to trips by the defendant corporation's president to U.S. trade shows and defendant's purchases from U.S.-based vendors).

particularity" what additional contacts she might hope to discover.

Finally, Patchen seeks jurisdictional discovery against McGuire. As stated above, Patchen's support for her belief that McGuire fed information from their personal correspondence to the other three defendants as part of some harassment campaign is exceedingly weak and vague.[23] If anything, her allegations simply indicate that McGuire mentioned personal information about Patchen to the other defendants at some point—*not* that he necessarily directed or conspired with them to defame or inflict emotional distress upon Patchen. "A plaintiff may not . . . undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2011). And again, the presumption in favor of jurisdictional discovery is reduced with respect to individuals. *Mass. Sch. of Law at Andover*, 107 F.3d at 1042.  I conclude that the allegations concerning McGuire do not justify granting Patchen's request for jurisdictional discovery.

For these reasons, I conclude that Patchen—in this, her third attempt to file a valid complaint—has not made allegations sufficient to entitle her to jurisdictional discovery with respect to any of the defendants.

### 7.    Civil-Conspiracy Claim

Having resolved the jurisdictional questions surrounding the claims that underlie the alleged conspiracy, I can now address the civil-conspiracy claim itself. "If a court dismisses the

---

[23] Patchen bases her belief on the following: (1) Maddox once addressed her as "babe" in an e-mail, and McGuire had previously addressed her in that manner; and (2) the statements of Dickerson, Maddox, and Loudon referred to the health problems of one of Patchen's friends, which was information she claims to have disclosed only to McGuire. (*See* 2d Am. Compl. ¶ 38, 48.)

causes of action which underlie a civil conspiracy claim, the civil conspiracy claim must also be dismissed." *Wolk v. Teledyne Indus., Inc.*, 475 F. Supp. 2d 491, 506 (E.D. Pa. 2007). Therefore, I conclude that Patchen has not established personal jurisdiction in this forum over any of the defendants with respect to the civil-conspiracy claim.[24] *See id.* (dismissing a civil-conspiracy claim after dismissing the underlying claims for lack of personal jurisdiction).

      C.      **Transfer Versus Dismissal**

My conclusion that personal jurisdiction does not lie in this forum does not end the inquiry; under 28 U.S.C. § 1631, I must consider whether transfer to another forum is a suitable alternative to dismissal. *Id.* ("Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action or appeal could have been brought.") Therefore, I will discuss whether any or all of the claims against ESM, McGuire, Loudon, Dickerson, and Maddox should be transferred under section 1631. Additionally, Patchen has moved under Federal Rule of Civil Procedure 21 and 28 U.S.C. § 1404(a) to have the claims against Maddox and Dickerson severed and transferred to the Middle District of Tennessee and the Western District of Washington, respectively. Thus, I must consider whether transfer of the claims against Maddox and Dickerson is warranted under section 1404(a).

"Where a district court itself lacks jurisdiction over a case, it shall transfer the matter to a court that has jurisdiction, unless, after an examination of the record, the district court determines

---

      [24] This conclusion also definitively precludes any possibility of co-conspirator jurisdiction. Personal jurisdiction in this forum does not lie against any of the defendants on any of Patchen's claims. To have jurisdiction over co-conspirators outside the forum, a court must exercise personal jurisdiction over at least one defendant. *See Mass. Sch. of Law at Andover*, 846 F. Supp. at 379 (requiring "resident" co-conspirator). This condition is not met here.

that it would not be in the interest of justice to do so." *Abunasser v. Holder*, 343 F. App'x 756,

759 n. 3 (3d Cir. 2009) (not precedential) (citing *Britell v. United States*, 318 F.3d 70 (1st Cir.

2003)). Under section 1631, "a plaintiff seeking transfer to a different district need only establish

a prima facie basis for personal jurisdiction in that district." *Pac. Emp'rs Ins. Co. v. AXA*

*Belgium S.A.,* 785 F. Supp. 2d 457, 475 (E.D. Pa. 2011). "Even though there is a presumption in

favor of transfer . . . if an action or appeal is fanciful or frivolous, it is in the interest of justice to

dismiss it rather than to keep it on life support." *Britell*, 318 F.3d at 75. So "a look at the merits

is indicated" by section 1631. I find the same standards are applicable, in this case, to Patchen's

motion under section 1404(a).[25] Therefore, the section 1404(a) question and the section 1631

---

[25] After all, section 1404(a) also requires that a transfer be "in the interest of justice." Dismissal of frivolous claims helps conserve judicial resources, an appropriate consideration in deciding motions under section 1404. *See, e.g., Kahhan v. City of Fort Lauderdale,* 566 F. Supp. 736, 738 (E.D. Pa. 1983). Furthermore, this is not the typical case where a defendant has moved for transfer; rather, the plaintiff, six months after the filing of the original complaint, has sought to switch her *own* choice of forum. *See Lie v. Texaco Ref. & Mktg., Inc.*, No. 89-7614, 1992 WL 7175 (E.D. Pa. Jan. 9, 1992)**.** This renders inapposite many of the usual considerations weighed by courts in deciding a section 1404(a) motion. *See Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970) (listing factors that apply when defendant is movant). It should also be noted that Patchen would be free to re-file all or most of her claims (depending on the pertinent limitations periods) in the respective forums.

"[S]ection 1404(a) was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). "In ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id.* at 879 (internal quotation marks omitted). Finally, "[t]he burden of establishing the need for transfer" rests on Patchen. *Id.*

Because I conclude that some consideration of the underlying merits of Patchen's claims is warranted even in the section 1404(a) context, the analysis under section 1631 and the analysis under section 1404(a) is identical for deciding whether to transfer the claims against Maddox and Dickerson.

question are one and the same with respect to Maddox and Dickerson.

Conceivably, all of the defendants could be haled into court if the claims against any one of them is transferred, because of the possibility of co-conspirator jurisdiction. *Cf. Mass. Sch. of Law at Andover, Inc.*, 846 F. Supp. at 379. Rather than focusing on individual defendants, then, I will analyze whether I should transfer *any* of Patchen's claims against *any* of the defendants to either the Western District of Washington or the Middle District of Tennessee (the two most plausible transferee forums).

### 1.    Western District of Washington

Patchen has moved for transfer of all claims against Dickerson to the Western District of Washington. Dickerson resides in Washington, so personal jurisdiction exists over her there. But as required by section 1631 and, in this case, section 1404(a), I look at the merits of Patchen's claims (against *all* defendants) to decide whether transfer is appropriate. Where transfer is necessary because a court lacks personal jurisdiction, the laws of the transferee forum apply. *Weber v. McDonald's Sys. of Europe, Inc.*, 660 F. Supp. 10, 14 (D. Del. 1985). I will thus analyze Patchen's claims under Washington state law.

I conclude that transfer of the IIED claim would not be in the interest of justice. Under Washington law, the tort of IIED has three elements: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of the plaintiff." *Robel v. Roundup Corp.*, 59 P.3d 611, 619 (Wash. 2002). In this case, Patchen has not alleged conduct of requisite outrageousness. Vulgar language has supported IIED claims, but only when coupled with special circumstances (such as when one's employer or supervisor is the perpetrator). *See Robel* 59 P.3d at 620. Patchen's recreational use of various

30

websites and her service for Singsnap do not put her in the same situation as those who suffer

extreme harassment in the workplace. She is not physically confronted by those verbally abusing

her, and her livelihood is not threatened. For these reasons, I conclude that Patchen's IIED claim

is frivolous and should not be transferred.

I conclude that Patchen's copyright claim is similarly without merit. An author can freely

transfer his or her copyrights in original material through a written and signed agreement or

through operation of law. 17 U.S.C. §§ 201(d), 204(a). While there is no signed agreement here,

"transfers of copyrights by operation of law" can be based on "circumstances which establish the

author's express or implied consent." *Brooks v. Bates*, 781 F. Supp. 202, 205 (S.D.N.Y. 1991).

Evidence shows that Patchen was aware of the user agreement with Singsnap and that the user

agreement gives Singsnap all copyrights in posted content.[26] This establishes Patchen's consent

to the transfer of her copyrights, and Patchen cannot bring an infringement action with respect to

the video. *See Silvers v. Sony Pictures Entm't, Inc.,* 402 F.3d 881, 884 (9th Cir. 2005) ("To be

entitled to sue for copyright infringement, the plaintiff must be the 'legal or beneficial owner of

---

[26] The user agreement provides in relevant part that: (1) "All copyrights in and to the Service, including but not limited SingSnap.com (including the compilation of content, postings, links to other internet resources, and descriptions of those resources), and software, are owned by SingSnap and/or its licensors"; and (2) "You agree to: . . . [e]xplicitly grant to SingSnap and to his/her assignees and licensees the absolute right and permission to use, broadcast, publish and the [sic] sell the video and audio recordings in any medium, throughout the world, without any restriction whatsoever." (McGuire's Mot. to Dimiss Ex. D).

Defendants point to one statement before the creation of the video that shows Patchen was familiar with the user agreement. (McGuire's Reply Ex. 3) ("If the songs are approved by the site then you are not breaking terms"). Defendants also note numerous statements made after 2007. (McGuire's Mot. to Dismiss Ex. E) ("That is against the [Terms of Use] of the website..[sic] All recordings on SingSnap are the property of SingSnap."); (*Id.* Ex. F) ("Under #5 of the TOU . . . [you] explicitly grant to SingSnap . . . the absolute right and permission to use . . .").

an exclusive right under a copyright.'" (quoting 17 U.S.C. § 501(b))).

Patchen may have more support for her defamation claim. Under Washington law, defamation requires the plaintiff to prove (1) falsity; (2) an unprivileged communication; (3) fault; and (4) damages. *Caruso v. Local Union No. 690 of International Brotherhood of Teamsters*, 670 P.2d 240, 244-45 (Wash. 1983). Where the plaintiff is a private figure and the issues involved are not of public concern, a plaintiff need not prove actual damages if a publication is "libelous per se." *Maison de France, Ltd. v. Mais Oui!, Inc.,* 108 P.3d 787, 798-99 (Wash. Ct. App. 2005). "The imputation of a criminal offense involving moral turpitude has been held to be clearly libelous per se." *Caruso,* 670 P.2d at 245. Washington courts have not clearly delineated the scope of "moral turpitude," but state only that the definition of moral turpitude is inexact and "necessarily general." *Matter of McGrath*, 655 P.2d 232, 234 (Wash. 1982). "A crime involves moral turpitude if it is an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men or to society in general." *Dearinger v. Dep't of Soc. & Health Servs.*, No. 31654-4-II, 2005 WL 3113495, at *4 n.13 (Wash. Ct. App. Nov. 22, 2005).

Most of the personal attacks Patchen cites are mere invective and are not actionable as defamation. *See Robel*, 59 P.3d at 622. However, one of Dickerson's alleged statements may arguably be actionable as libel. In reference to Patchen, he wrote that "members are posting personal e[-]mails with malicious intent and other civil infractions. Some of their content crosses the line into criminal activity." (2d Am. Compl. Ex. H.) But while the statement may be actionable, it cannot be libelous per se; after all, if "crime of moral turpitude" is to have any definition apart from "crime," then a bare assertion of "criminal activity" cannot be enough.

Thus, Patchen would not be able to collect presumed damages, but would be forced to establish actual damages from Dickerson's lone statement. Patchen's second amended complaint conclusorily states that "as a direct and proximate cause of these statements, [Patchen] has suffered damages." (*Id.* ¶ 74.) There are no further allegations to flesh out this bare-bones assertion. In light of these considerations, Patchen's defamation claim is too speculative and insubstantial to warrant transfer to Washington.

I conclude that the IIED, copyright, and defamation claims against Dickerson and the other defendants are frivolous under Washington law. This leaves the civil conspiracy claim. "[T]he conspiracy itself, without any actionable wrongs being done thereunder, ordinarily cannot be made the subject of a civil action." *W.G. Platts, Inc. v. Platts*, 438 P.2d 867, 870 (Wash. 1968). *See also Beck v. Prupis*, 529 U.S. 494, 504 (2000) ("The principle that a civil conspiracy plaintiff must claim injury from an act of a tortious character was so widely accepted . . . as to be incorporated in the common understanding of 'civil conspiracy.'"). Simply put, a civil conspiracy claim cannot stand alone. Since I have found that Patchen's underlying claims should not be transferred for lack of merit, neither should the civil-conspiracy claim.

Because transfer is not in the interest of justice, I will deny Patchen's request for transfer to the Western District of Washington, where she could have brought her claims, at least against Dickerson, in the first place.

### 2.    Middle District of Tennessee

Patchen has moved for the transfer of all claims against Maddox to the Middle District of Tennessee. Again, personal jurisdiction is established there because Maddox resides in Tennessee. And theoretically, if the action is maintained against Maddox in Tennessee, the other

defendants may be haled into court there under a conspiratorial theory of jurisdiction. Here, I analyze Patchen's claims under Tennessee law, which would apply if her claims were transferred to the Middle District of Tennessee. *See Weber*, 660 F. Supp. at 14.

As explained above, transfer of the copyright claim would not be in the interest of justice—from the evidence presented, Singsnap owns the copyrights in the video and Patchen is not entitled to bring suit.[27]

I also conclude that transfer is not warranted for Patchen's defamation claim. Patchen is unlikely to be able to make out a claim for defamation under Tennessee law. She need only show that defendants "published a false statement that defamed" her. *Farmer v. Hersh*, No. W2006-01937-COA-R3-CV, 2007 WL 2264435, at *5 (Tenn. Ct. App. Aug. 9, 2007). But "[m]ere hyperbole or exaggerated statements intended to make a point are not actionable defamatory statements.*" Id.* Numerous Tennessee court decisions rely on section 566 of the Restatement (Second) of Torts, so I look to that source for guidance. *See, e.g, id.* at *6 (quoting *McCluen v. Roane Cnty. Times, Inc.*, 936 S.W.2d 936 (Tenn. Ct. App. 1996). Section 566 provides that "there are some statements that are in form statements of opinion, or even of fact, which cannot reasonably be understood to be meant literally and seriously and are obviously mere vituperation and abuse."  Restatement (Second) of Torts § 566 cmt. e (1977). Such statements are not actionable as defamation. *Id.* Almost all of the defendants' comments here cannot be reasonably construed as anything but "mere vituperation and abuse."[28]

---

[27] The same law applies in Tennessee and Washington, because the copyright claim is a federal cause of action. *See* 17 U.S.C. § 501(b).

[28] The one possible exception is, again, Dickerson's accusation of "criminal activity." None of Maddox's statements qualifies as defamation. Under Tennessee case law, "actual

Patchen's IIED claim against the defendants is similarly meritless. "The elements of an intentional infliction of emotional distress claim are that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012). Tennessee law sets a high threshold in determining whether conduct is outrageous enough to support IIED. *See Weaver v. Purdue,* No. M2010-00124-COA-R3-CV, 2010 WL 4272687, at *5 (Tenn. Ct. App. Oct. 28, 2010) ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." (quoting Restatement (Second) of Torts § 46 cmt. d (1965))). "[L]iability for mental distress damages clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities." *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn. 1997) (internal quotation marks omitted). The defendants' Internet posts and e-mails to Patchen were "mere insults." These insulting communications and the alleged acts of copyright infringement do not meet Tennessee's demanding standard for IIED.

Finally, I address Patchen's civil-conspiracy claim. Under Tennessee law—as is the case with Washington law—civil conspiracy is not independently actionable without some predicate tort. *Watson's Carpet and Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 179-80 (Tenn. Ct. App. 2007). I conclude that Patchen's IIED, defamation, and copyright claims to be frivolous,

---

damage must be sustained and proven in all defamation cases." *Kersey v. Wilson*, No. M2005-02106-COA-R3-CV, 2006 WL 3952899, at *6 (Tenn. Ct. App. Dec. 29, 2006). Because Patchen's allegations of damages are vague and conclusory, I conclude that transfer of the defamation claim is not warranted based on Dickerson's lone statement.

and under Tennessee law, I cannot transfer her standalone conspiracy claim.

For these reasons, I conclude that transfer of Patchen's claims to the Middle District of Tennessee, where she could have brought her claims, at least against Maddox, in the first place, is not in the interest of justice.

**3.      Other possible transferee forums**

Patchen's transfer motion against Maddox and Dickerson named the two most plausible transferee districts—those where Maddox and Dickerson reside. Patchen has not alleged any contacts between ESM, McGuire, or Loudon and any other forum to which I could transfer her action. These defendants all reside outside of the country (McGuire and ESM in Canada and Loudon in Scotland). Therefore, Patchen has not made a prima facie case that any district court (besides the two discussed above) could exercise personal jurisdiction over any of the defendants. Because I conclude that transfer under section 1631 and section 1404(a) is inappropriate, I will dismiss all of Patchen's claims.

**IV.    CONCLUSION**

For the reasons explained above, I will dismiss the claims against ESM, McGuire, Maddox, Loudon, and Dickerson for lack of personal jurisdiction. I will deny Patchen's motion to sever and transfer the claims against Maddox and Dickerson. An appropriate order follows.

36